# GEORGE HOUSTON v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY.

(46 L.R.A. (N.S.) 589, 141 N. W. 994.)

**Motion for judgment non obstante — order denying — nonappealable.**

1. Following Turner v. Crumpton, recently decided by this court, ante, 134, *held*, that an order denying a motion for judgment *non obstante veredicto* is nonappealable.

**Supreme court — power — order — judgment — non obstante veredicto — motion — district court.**

2. *Held*, construing § 7044, Rev. Codes 1905, that this court in a proper case has power, on appeal, to order judgment *non obstante veredicto*, although no motion was made in the lower court for judgment notwithstanding the verdict or for a new trial.

**Testimony — statement — motion to strike — rules of court.**

3. Where, as in this case, the testimony is very brief and consists of but a few printed pages, a motion to strike the statement from the abstract for failure to conform strictly to rule 7 of this court, requiring such testimony to be reduced to the narrative form, will be denied.

**Railways — conductor — police officer — passengers — arrest — evidence — liability of company.**

4. Plaintiff, who was a passenger on defendant's train from B. to M., was wrongfully arrested at the instance of defendant's conductor, about five minutes after alighting from the train at M., and while standing on the depot platform conversing with his companions.

*Held*, for reasons stated in the opinion, that whether at the time of such arrest, plaintiff's status as a passenger had ceased, so as to exonerate the company from any duty as a carrier towards him, was, under the facts disclosed

---

Note. — The authorities upon the carrier's liability for arrest by special police officers appointed by public authority are collated in notes in 23 L.R.A. (N.S.) 289 and 30 L.R.A. (N.S.) 481.

Upon the question of the carrier's liability for arrest or false imprisonment by servant employed as detective, policeman, or watchman, see notes in 4 L.R.A. (N.S.) 282, and 28 L.R.A. (N.S.) 88. And as to the liability of carrier for wrongful arrest of passenger by servant, generally, see notes in 7 L.R.A. (N.S.) 162; 34 L.R.A. (N.S.) 299; and 32 Am. St. Rep. 100.

Upon the duty to protect passenger from arrest, see note in 32 L.R.A. (N.S.) 526. And for the limit of the carrier's absolute obligation to protect passengers from wrongful arrest, see note in 40 L.R.A. (N.S.) 1073.

by the evidence, not material or controlling, as such conductor was not at the time acting for the company, but as a policeman for the state pursuant to the duty imposed upon him under the provisions of chapter 228, Laws 1911, and the company is not liable for his acts.

Opinion filed May 3, 1913. Rehearing denied May 31, 1913.

Appeal from County Court, Ward County; *N. Davis, J.*

From a judgment in plaintiff's favor, defendant appeals.

Reversed with directions.

*Palda, Aaker, & Greene,* for appellant; *Alfred H. Bright, John L. Erdall,* of counsel.

At the time of the claimed assault and arrest of the plaintiff, the relation of carrier and passenger had ceased between defendant and plaintiff, and the defendant, at such time, owed the plaintiff no duty that might arise out of such relationship. Ware v. Barataria & L. Canal Co. 15 La. 169, 35 Am. Dec. 201.

As a general rule the relation of passenger and carrier terminates when, upon arrival at his destination, the passenger alights and has a reasonable time to depart in safety from the premises of the carrier. 4 Elliott, Railroads, ¶ 1592; Glenn v. Lake Erie & W. R. Co. 165 Ind. 659, 2 L.R.A.(N.S.) 872, 112 Am. St. Rep. 255, 75 N. E. 282, 6 Ann. Cas. 1032, 19 Am. Neg. Rep. 7; Heinlein v. Boston & P. R. Co. 147 Mass. 136, 9 Am. St. Rep. 676, 16 N. E. 698; Chicago, R. I. & P. R. Co. v. Wood, 44 C. C. A. 118, 104 Fed. 663.

Upon the plaintiff's arrival at the station, he left the train of defendant, and by his own act broke the continuity of his journey and thereby terminated at once his relation as defendant's passenger. Glenn v. Lake Erie & W. R. Co. 165 Ind. 659, 2 L.R.A.(N.S.) 872, 112 Am. St. Rep. 255, 75 N. E. 282, 6 Ann. Cas. 1032, 19 Am. Neg. Rep. 7; Heinlein v. Boston & P. R. Co. 147 Mass. 136, 9 Am. St. Rep. 676, 16 N. E. 698.

*E. R. Sinkler,* for respondent.

The statement of the case is only a copy of the stenographer's notes. It is not in narrative form, and is not in compliance with the rules of court, and must be stricken out. Rev. Codes 1905, § 7058; Rule VII. of the supreme court, 10 N. D. XLII.; Thuet v. Strong, 7 N. D. 565, 75 N. W. 922; O'Keefe v. Omlie, 17 N. D. 404, 117 N. W. 353.

The motion for judgment notwithstanding the verdict should be made on the reception of the verdict, or at least within the time when a motion for a new trial can be made. Marshalltown Stone Co. v. Des Moines Brick Mfg. Co. — Iowa, —, 101 N. W. 1124; Scheible v. Hart, 11 Ky. L. Rep. 607, 12 S. W. 628; State v. Commercial Bank, 6 Smedes & M. 218, 45 Am. Dec. 280.

Motion for judgment notwithstanding the verdict cannot be granted where there is any substantial evidence sustaining the verdict. Richmire v. Andrews & G. Elevator Co. 11 N. D. 453, 92 N. W. 820; 2 Enc. Pl. & Pr. 912; Cruikshank v. St. Paul F. & M. Ins. Co. 75 Minn. 266, 77 N. W. 958.

It should appear that the moving party is entitled to judgment as a matter of law. Marquardt v. Hubner, 77 Minn. 442, 80 N. W. 617; Bragg v. Chicago, M. & St. P. R. Co. 81 Minn. 130, 83 N. W. 511; Merritt v. Great Northern R. Co. 81 Minn. 496, 84 N. W. 321; Kerr v. Anderson, 16 N. D. 36, 111 N. W. 614; Ætna Indemnity Co. v. Schroeder, 12 N. D. 110, 95 N. W. 436; Meehan v. Great Northern R. Co. 13 N. D. 432, 101 N. W. 183.

From a right to a directed verdict it does not necessarily follow that the party is entitled to a judgment *non obstante veredicto* in the supreme court. American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99.

Where there are no specifications showing wherein the verdict is contrary to law, or the evidence, nor errors in the instructions pointed out, a motion for judgment notwithstanding the verdict should be denied. Pease v. Magill, 17 N. D. 166, 115 N. W. 260; State use of Part-Parr Co. v. Robb-Lawrence Co. 17 N. D. 257, 16 L.R.A.(N.S.) 227, 115 N. W. 846; Sim v. Rosholt, 16 N. D. 77, 11 L.R.A.(N.S.) 372, 112 N. W. 50; Pine Tree Lumber Co. v. Fargo, 12 N. D. 360, 96 N. W. 357; Welch v. Northern P. R. Co. 14 N. D. 19, 103 N. W. 396.

The conductor was acting in the capacity of a peace officer. He ordered plaintiff's arrest in that capacity. Rev. Codes 1905, § 9755.

A railroad company is liable for the wrongful acts of its agents as peace officers. King v. Illinois C. R. Co. 69 Miss. 245, 10 So. 42; Gillingham v. Ohio River R. Co. 35 W. Va. 588, 14 L.R.A. 798, 29 Am. St. Rep. 827, 14 S. E. 243; Schmidt v. New Orleans R. Co. 7 L.R.A.(N.S.) 162, and notes, 116 La. 311, 40 So. 714; Elser v. South-

ern P. R. Co. 7 Cal. App. 493, 94 Pac. 852; Eichengreen v. Louisville & N. R. Co. 96 Tenn. 229, 31 L.R.A. 702, 54 Am. St. Rep. 833, 34 S. W. 219; Palmeri v. Manhattan R. Co. 133 N. Y. 261, 16 L.R.A. 136, 28 Am. St. Rep. 632, 30 N. E. 1001; Atchison, T. & S. F. R. Co. v. Henry, 55 Kan. 715, 16 L.R.A. 465, 41 Pac. 952, 8 Am. Neg. Cas. 280; Krulevitz v. Eastern R. Co. 143 Mass. 228, 9 N. E. 613; Lynch v. Metropolitan Elev. R. Co. 90 N. Y. 77, 43 Am. Rep. 141; Rown v. Christopher & T. Street R. Co. 34 Hun, 471; 20 Am. & Eng. Enc. Law, 173.

What under all the circumstances is a reasonable time for a passenger to leave the premises after alighting from the train is a question of fact for the jury. The plaintiff in this case was still a passenger of defendant when arrested. Powell v. Philadelphia & R. R. Co. 220 Pa. 638, 20 L.R.A.(N.S.) 1019, 70 Atl. 268; Houston & T. C. R. Co. v. Batchler, 37 Tex. Civ. App. 116, 83 S. W. 902; Messenger v. Valley City Street & Interurban R. Co. 21 N. D. 82, 32 L.R.A.(N.S.) 881, 128 N. W. 1023; Hodges v. Southern P. R. Co. 3 Cal. App. 307, 86 Pac. 620; Chicago, R. I. & P. R. Co. v. Wood, 44 C. C. A. 118, 104 Fed. 663; Texas & P. R. Co. v. Dick, 26 Tex. Civ. App. 256, 63 S. W. 895, 10 Am. Neg. Rep. 196; St. Louis South Western R. Co. v. Wallace, 32 Tex. Civ. App. 312, 74 S. W. 586; McDade v. Norfolk & W. R. Co. 67 W. Va. 582, 68 S. E. 378.

FISK, J. This action was tried in the county court of Ward county before a jury, and resulted in a verdict in plaintiff's favor for the sum of $750 on October 31, 1911. Thereafter and on December 28th, judgment was duly rendered on such verdict. On December 4th counsel for defendant served upon plaintiff's attorneys a notice that on December 12th they would make a motion for judgment in favor of defendant notwithstanding the verdict and for an order granting a new trial, in the event such motion for judgment should be denied. Such motion designated but one ground thereof, to wit, insufficiency of the evidence to justify the verdict. On January 12, 1912, the parties appeared before the court, whereupon counsel for defendant moved the court for judgment notwithstanding the verdict, without incorporating therewith a motion for a new trial. Objections were filed by plaintiff's counsel to the hearing of such motion, upon the ground that it came

too late, and that no notice of intention to move for a new trial was ever served. Thereupon the trial judge made an order denying the motion, and the defendant attempts to appeal from such order, as well as from the judgment. The order, if treated merely as an order denying the motion for judgment notwithstanding the verdict, is nonappealable, as we have recently held in Turner v. Crumpton, ante, 134, 141 N. W. 209. It is unnecessary, however, to waste any time upon such question of practice, for the only proposition attempted to be urged by appellant by its motion is raised on the appeal from the judgment; namely, that the court erred in denying defendant's motion for a directed verdict at the close of the testimony. If the trial court should have directed a verdict, this court has the power to do so on the appeal from the judgment, even though no motion was made in the lower court for judgment notwithstanding the verdict or for a new trial. Such appears to be the plain provision of § 7044, Rev. Codes 1905.

This brings us to a consideration of the appeal from the judgment. Respondent has made a motion in this court to strike out the statement of the case for failure to comply with rule 7 of this court, which requires the testimony to be reduced to narrative form. While this court will ordinarily require a strict compliance with such rule, as held in numerous cases, yet, owing to the exceptionally short record, the testimony in which comprises but a few pages, we have concluded not to enforce such strict compliance in the case at bar. The only testimony introduced is that of the plaintiff, defendant offering no testimony whatever, and the only specifications of error incorporated in the settled statement are predicated upon the rulings of the court in denying defendant's motions for a directed verdict.

Plaintiff testifies in substance that on July 22, 1911, he was a passenger on one of defendant's passenger trains en route from Burlington to Minot, having purchased a ticket at Burlington entitling him to ride on such train to Minot. During such trip one Ole Johnson, also a passenger on said train, approached plaintiff and offered him a drink, which plaintiff declined, whereupon the conductor of the train jumped up and grabbed the bottle from Johnson, and kept it, saying at the same time: "When I get to Minot I will have you fellows arrested." He also testified that upon the arrival of the train at Minot he and his companions alighted from the train to the depot platform, but saw no

officer there at that time. A few minutes thereafter an officer ar-
rived, and the conductor pointed to plaintiff and two companions say-
ing, "That is them there," whereupon the officer said to plaintiff and
such companions, "Come with me," and they were arrested and taken
to jail. While the officer was taking these parties away from the de-
pot, said conductor, holding the bottle in his hand, said, "Here is
enough to convict the boys." Upon arrival at the jail, plaintiff and
his companions were incarcerated therein, where they were confined
from about 1 o'clock P. M. until about 7 P. M., when they were released.
On cross-examination plaintiff testified that it was about five minutes,
as near as he could judge, from the time he left the train until the
arrest was made, and that he had no business which detained him or
kept him waiting on the depot platform during such interval of five
minutes, and the only reason he gave for remaining there was that he
and his companions were "just talking back and forth is all I know."
The cross-examination of plaintiff discloses that the bottle in question
contained whisky.

The foregoing is all the testimony which is material to the question
involved. At the close of such testimony the defendant's counsel
moved for a directed verdict upon the ground "that the testimony on
the part of the plaintiff is wholly insufficient to establish a cause of
action, the issue as alleged in the complaint, or otherwise; it appear-
ing from the testimony that no officer or employee in charge of the
train or in the employ of the defendant arrested, in the course of the
discharge of any duty or obligation of his to the company, the plaintiff
in this case, or that he arrested him at all. The complaint charges
that the defendant, through its servants and employees on the occasion
described, did wrongfully assault and arrest the plaintiff, and deprive
him of his liberty, which allegation is wholly unsupported by any evi-
dence so far offered or by any evidence offered by the plaintiff." Such
motion was denied and an exception taken, and this ruling is the sole
error specified in the settled statement of the case. While one of the
assignments of error in appellant's brief is that the court erred in
overruling appellant's motion for judgment notwithstanding the ver-
dict, such assignment is not properly before us, for reasons heretofore
stated.

Was it error to deny defendant's motion for a directed verdict? This is the sole question in the case.

Counsel for appellant argue that the proof discloses that, prior to the arrest, the relation of carrier and passenger between defendant and plaintiff had ceased, and consequently that defendant owed plaintiff no duty which such a relation might impose upon it. That any act of the conductor performed towards or connected with such arrest five minutes after plaintiff alighted from the train, and while he was on the depot platform, was without the scope of his duty as defendant's servant, and consequently defendant is in no manner accountable therefor. They, of course, concede the general rule of liability of a master for the wrongful acts of its servants, when performed within the scope of such servants' employment. The crucial question on this appeal, therefore, is whether defendant is responsible for the acts of its conductor, of which plaintiff complains. The appellant contends that no such responsibility exists, if plaintiff, at the time of the arrest, had ceased to be a passenger; and, further, that the right of action alleged is founded upon such relation, and no recovery can be sustained if such relation had ceased at the time of the acts complained of. While, on the contrary, defendant contends that such is not a necessary or proper test of liability, and that defendant is liable under the undisputed facts, even though the court should hold, as a matter of law, that the relation of carrier and passenger had ceased at the time of such wrongful arrest.

As we view the matter, it is not material whether at the time of the arrest the status of plaintiff as a passenger had ceased, or had not ceased; for under the plaintiff's own version of the facts the company on no theory can be held liable for such arrest, for the obvious reason that such conductor, in doing what he did, was not acting for the company, but was discharging a duty imposed upon him by law. The acts complained of were not done within the real or apparent scope of the master's business, and consequently the latter cannot be held responsible for such acts under any rule known to the law. Instead of acting or assuming to act for the company, such conductor was manifestly attempting to discharge what he deemed a duty imposed upon him by chapter 228, Laws 1911. Section 1 of this law makes it a crime to publicly drink or offer to another any intoxicating beverage upon a

train carrying passengers in this state, with certain enumerated exceptions. Section 2 confers police powers upon every passenger conductor, and makes it his *duty,* while thus engaged, to arrest any person who shall, in his presence or to his knowledge, violate the provisions of § 1, and to deliver such person to any policeman, constable, or other peace officer, to be by him informed against and prosecuted.

Is it possible that the common carrier can be held responsible for the faithful and proper discharge of such statutory duty thus imposed upon its servant? We think not, nor has the legislature by such act attempted to impose any such burden upon it. While acting in obedience to such statute, it cannot be said that the conductor is acting for the railway company at all. Such company has no control over him whatsoever while he is in the discharge of the duty thus imposed upon him by the sovereign power of the state.

The authorities relied on by respondent are clearly distinguishable from the case at bar. They are cases where the servant, in doing the act complained of, was acting *for* the master, either within the actual or implied scope of his employment, or such acts were violative of the implied contract of the master for the protection of its passengers.

In announcing the foregoing conclusion, we are not unmindful of the numerous authorities holding a railway company liable for the acts of its servants committed within the scope of their authority, or even for acts which are done not for the benefit of the master or within the scope of authority, provided such acts are violative of the master's implied contract of protection and proper treatment of its passengers at the hands of its servants, which the courts generally hold is a part of the contract of carriage. The latter liability did not exist at common law, the rule formerly being that the master was not liable for the torts of a servant committed wilfully, and not for the benefit of the master. This added responsibility of the carrier is not unjust or intrinsically harsh, for the carrier has a measure of protection by using due care in the selection of its servants. A very different situation, however, is presented in the case at bar. Chapter 228, Laws 1911, creates a new offense, a new *malum prohibitum* as above stated, which makes it unlawful to publicly drink or offer another an intoxicating beverage upon a railway train. It imposes no duty upon the railway company, but confers police power upon every conductor, and imposes

a specific duty upon him with reference to the enforcement of such law. In discharging such duty the conductor does so, not in order to protect the other passengers, nor to carry out the master's implied contract to protect such passengers, nor in violation of the protection which the company owes to the particular passenger, but, as before stated, at the behest and command of the sovereign state. He acts for the state, not the railway company, and the former's interests alone are controlling of his acts. The legislature, in its wisdom, saw fit to place the duty to enforce this law, not upon the railway companies, but upon their conductors. Their responsibility and duty in such cases is not to their companies, but to the state. It logically follows that the companies have no voice in the matter; and even though deemed detrimental to their interest, the enforcement of said statute cannot in any legal manner be controlled by them. Manifestly, therefore, the framers of the statute in question never intended to impose a liability on the railway companies in such cases; it being clearly their intention that, in the enforcement of such statute, the conductor should be deemed an officer of the state, and not of the company. There is no difference between this case and one where a constable or sheriff makes an arrest upon a railway train or at a railway station. In such a case it is clear that the railway company would not be liable for an abuse or an improper exercise of such official duty. It is very doubtful, indeed, whether the carrier could be legally subjected to such responsibility; but it is not necessary for us to determine such question, as by such statute the legislature has not attempted to do this. It would be different, as held in numerous cases, if the conductor had been vested merely with police powers to be exercised at his own or the company's behest, and for the benefit of the company. See 3 Elliott, Railroads, § 1265, and cases cited; Gillingham v. Ohio River R. Co. 35 W. Va. 588, 14 L.R.A. 798, 29 Am. St. Rep. 827, 14 S. E. 243; Dickson v. Waldron, 135 Ind. 507, 24 L.R.A. 483, 488, 41 Am. St. Rep. 440, 34 N. E. 506, 35 N. E. 1. But it is held that where he may act in either one of two capacities,—as a policeman for the state or as a servant for the master,—the presumption would be that he acted in the former capacity. Jardine v. Cornell, 50 N. J. L. 485, 14 Atl. 590; Foster v. Grand Rapids R. Co. 140 Mich. 689, 104 N. W. 380, 18 Am. Neg.

Rep. 479. See also Tolchester Beach Improv. Co. v. Steinmeier, 72 Md. 313, 8 L.R.A. 846, 20 Atl. 188.

In Jardine v. Cornell, supra, we quote the following: "The act of the police in removing the plaintiff from the train to the station house was a continuous one; it was their duty as officers of the law to do so, and it was not within the scope of their employment in enforcing the regulations of the railroad company. Upon an undisputed state of the facts the question presented is for the court. Where a police officer takes a disorderly person from the scene of his disorder to the police station, it will be presumed to have been done in his official character, unless such presumption is repugnant to some rule of law or is rebutted by the facts of the case."

Counsel for respondent calls our attention to § 9755 of the Revised Codes, which makes railroad companies responsible for the acts of its conductors or other persons employed by it, while acting as peace officers, under the provisions of article 8 of chapter 6 of the Code of Criminal Procedure. Such article authorizes railway companies, at their own expense, to employ persons as peace officers for the protection of their property or the preservation of order on their premises, etc., and it is perfectly proper that the legislature should have imposed upon the companies the responsibility for the acts of such peace officers. Manifestly, however, the provisions of article 8, aforesaid, can have no application to the case at bar, for reasons which, we think, are made plain in a prior portion of this opinion.

We are agreed that under the undisputed facts as narrated by the plaintiff the recovery cannot be upheld, and that it was the duty of the court to have granted defendant's motion for a directed verdict.

The judgment is reversed, and the lower court will vacate the same and enter a judgment dismissing the action.