HAGER *v*. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

### Opinion delivered March 8, 1915.

RAILROADS—EJECTING PASSENGER FROM TRAIN—ACT OF CONDUCTOR.—Defendant railway's conductor ejected plaintiff from a train on the ground that he was drunk. Under the law of Illinois, where the act was done, railway conductors were given authority to cause the arrest of drunken persons on trains. *Held,* when the conductor merely ejected plaintiff, without arresting him, he was not acting under the statute, but was acting in his capacity as a conductor, and that the railway company would be liable for his negligent acts, and it was error to direct a verdict for the defendant railway company.

Appeal from Lawrence Circuit Court, Eastern District; *W. A. Cunningham,* Special Judge; reversed.

STATEMENT BY THE COURT.

This suit was instituted in favor of Charles Hager, a minor, by his next friend, A. P. Hager, against the St. Louis, Iron Mountain & Southern Railway Company for injuries alleged to have been sustained by reason of said railway company's conductor unlawfully ejecting him from one of its trains at Dupo, Illinois. The facts are as follows:

In June, 1913, A. P. Hager shipped some cattle over the defendant's line of railway from Walnut Ridge, Arkansas, to East St. Louis, Illinois. Hager and his son Charles, then twenty years of age, accompanied the cattle, and were furnished transportation by the railway company. At Dupo, Illinois, a switch engine takes the train and carries it into East St. Louis. When the train arrived at Dupo the Hagers and other stockmen riding on the train went into a restaurant there where there was a saloon to get breakfast. Charles Hager had two drinks of whiskey while there and after breakfast, together with the other stockmen, attempted to board the train for East St. Louis, Illinois. The conductor refused to allow him to get on the train on the ground that he was drunk and boisterous.

The testimony on the part of the plaintiff tended to show that Charles Hager was lame and approached the steps of the coach leaning on the shoulder of a friend; that as he went to step up into the coach the conductor ordered him to get off; that the conductor told him that he was drunk and that he could not and would not permit him to ride on the train; that both Charles Hager and his father told the conductor that Charles was not drunk and that the conductor cursed him and shoved him off the steps of the coach.

Several witnesses testified in behalf of the plaintiff and said that Charles Hager was not drunk.

The testimony on the part of the defendant tended to show that Charles Hager was drunk and boisterous

and that on this account the conductor refused him per-
mission to enter the coach.

At the conclusion of the testimony the court directed
a verdict for the defendant and the plaintiff has appealed.

*W. P. Smith,* for appellant.

1. The proof does not show that the conductor ever
arrested the appellant, or attempted to arrest him or to
exercise any authority over him, acting under any State
law.

The verdict having been directed against the appel-
lant, the court, in testing the verdict, will give the evi-
dence its strongest probative force in his favor; but even
if the rule were reversed, it is still a very close ques-
tion of fact whether the appellant was drunk or intoxi-
cated in any degree, and it should have been left to the
jury to say whether or not the conductor was acting in
good faith when he ejected appellant. 83 Ark. 6; 95
Ark. 506.

Drunkenness has been variously defined, but the
better rule seems to be that it is a question solely for the
jury and that it should be left to them to determine from
all the facts in evidence, without an attempt at defini-
tion. 84 Ark. 81.

At the most the testimony might lead to the conclu-
sion that appellant was slightly intoxicated; but slight
intoxication, such as would not be likely to seriously af-
fect the conduct of the person intoxicated, would not be
sufficient ground to refuse him passage in a public car,
although his behavior might not be in all respects becom-
ing. 57 Ind. 576; 26 Am. Rep. 68; 18 Am. Ry. Rep. 454.
The mere fact of intoxication does not of itself deprive
a person of the right to passage on a railway car, nor
does it relieve the company from its duty to render to
him due care as a passenger. 66 N. Y. 642; 4 Hun. 409;
6 Thomp. & C., N. Y. 586; 14 Am. Rep. 190.

2. In response to the contention that the conductor
in ejecting a drunken passenger is, under the Illinois
statute, an officer of the State and not of the railway
company in so doing, and that the statute expressly

exempts the company from liability, it is sufficient to say it is still a question of fact for the jury to determine whether or not the conditions existed at the time of the expulsion to justify that act.

If it is urged that the conductor is the sole judge as to whether or not these conditions existed, even in that case he must have been acting in good faith, and if he was not, the company can not invoke the benefits of such a rule.  105 Ark. 619.

*E. B. Kinsworthy, Troy Pace, Campbell & Suits* and *T. D. Crawford,* for appellee.

The court properly directed the verdict.  The Illinois law expressly declares the conductor in such cases to be acting for the State and not as an employee of the company.  Laws of Illinois, 1911, p. 462; Acts North Dakota, 1911, p. 345, a similar act; 141 N. D. 944; 128 Pac. 98.

HART, J., (after stating the facts).  The defendant seeks to uphold the judgment under the Acts of Illinois of May 25, 1911.  The first two sections of the act read as follows:

"Section 1.  That any person who shall drink any intoxicating liquor, or who shall be intoxicated, in or upon any railroad smoking car, parlor car, day coach, interurban car or caboose car, in use for the transportation of passengers, or in or about any railroad station or platform, upon conviction thereof, shall be fined not less than twenty-five dollars, nor more than one hundred dollars, or imprisoned in the county jail for not less than thirty days, nor more than one hundred days, or both such fine and imprisonment.

"Section 2.  Every railroad conductor, while on duty, is hereby authorized and empowered to exercise in any county of this State, for the purpose of enforcing the provisions of this act, all the common law and statutory powers conferred upon sheriffs, and it is hereby made the duty of all such conductors to enforce the preceding section of this act and to arrest without process any person who violates any provision thereof, and in so

doing they shall he held to act for the State and not as employees of the company. Any person or persons so arrested shall be delivered by such conductor to some judge, justice of the peace, sheriff, constable or police officer at some station or place within the county in which the offense was committed, for trial according to law. Provided, that if the car on which such arrest is made does not stop within the county within which such offense was committed, then such conductor shall deliver the person so arrested to some sheriff, constable or police officer of the county wherein such car shall first stop after such arrest, who shall deliver the person so arrested to some judge or justice of the peace of the county in which the offense was committed for trial." See Laws of Illinois, 1911, page 462.

In the case of *Tarantina* v. *Louisville & N. R. Co.*, 98 N. E. 999, the Supreme Court of Illinois held that the act in question was constitutional. The court in discussing the act said:

"The subject-matter of this act is the use of intoxicating liquor upon railroads. The object to be accomplished was the preservation of good order in railroad trains and about railroad stations. All the provisions of the act concern this subject-matter, and tend to accomplish this result. The prohibition of intoxicated persons on certain cars and at stations and platforms, and the provisions for the prompt arrest of offenders by conferring certain powers on conductors, are certainly reasonably calculated to prevent the drinking of intoxicating liquors at such places, and therefore come within the title of the act whether they are subject to any other constitutional objection or not."

The Supreme Court of North Dakota in the case of *Houston* v. *Minneapolis, St. Paul & S. S. M. Ry. Co.*, 141 N. W. 994, held that an act in all essential respects similar to the one under consideration was constitutional.

We do not think the statute of Illinois above quoted has any application under the facts in this case. As was said in the last mentioned case, the statute confers

police powers upon the conductor and imposes a specific duty upon him with reference to the enforcement of the law. In discharging his duty under the statute the conductor acts, not in order to protect the other passengers and carry out the railroad company's implied contract to protect such passengers, but at the command of the State in compliance with a duty imposed upon him by it. Under the express terms of the statute he is made to act for the State and not for the railroad company. Therefore, under the terms of the statute, when the conductor in the discharge of his duties imposed upon him by statute, arrests a person who is intoxicated upon any railroad car or in or about any railroad station or platform, and delivers the offender to a justice of the peace to be dealt with according to the terms of the statute he is acting for the State, and not for the railroad company, and in such cases the railroad company can not be made liable for false imprisonment because, under the very terms of the statute the conductor is held to be acting for the State, and not as an employee of the railroad company.

In the case before us, the conductor did not arrest Charles Hager, and did not deliver him to an officer to be dealt with according to the terms of the statute. He acted solely in the line of his duty as conductor of the train of the defendant, and, exercising the duties imposed upon him as such conductor, ejected Charles Hager from the train because he was boisterously drunk, and his presence on the train might be hurtful to or offend other passengers. See *Price* v. *St. Louis, I. M. & S. Ry. Co.*, 75 Ark. 479.

There is no connection whatever between his authority to put a drunken passenger off the car when acting in the line of his duty as conductor of the train and thus preventing annoyance and harm to other passengers on the train, and the duty imposed upon him by law to arrest a drunken passenger and deliver him to an officer to be dealt with according to the terms of the statute above quoted. In the former case, he is acting for the railroad

company; in the latter for the State. In order to relieve the railroad company of liability for his acts, the conductor must act strictly within and according to the powers expressly conferred upon him by the statute. As we have already seen the conductor did not arrest Charles Hager and deliver him to a justice of the peace or other officer to be dealt with according to law, and, because he was not acting under the statute, the railroad company can not escape responsibility for his acts done in the performance of a duty while acting in the direct line of authority given him by the railroad company.

The testimony on the part of the plaintiff shows that Charles Hager was not drunk at the time the conductor ejected him from the train. It follows that the court erred in directing a verdict for the defendant company, and for that error the judgment will be reversed and the cause remanded for a new trial.