The German Insurance Company of Freeport, Illinois, v. Nancy Amsbaugh.

### No. 454.

1. Fire Insurance—*Proof of Amount of Loss—Secondary Evidence.* In an action on an insurance policy to recover the value of a stock of goods destroyed by fire, an inventory of the stock, taken six and one-half years before the fire, and shown to be a correct inventory as to quantities and values, is competent evidence, in connection with the books of account of the plaintiff, duly kept and proved, showing the purchases and sales of goods from the date of the inventory to the fire, it further appearing that all other and better evidence tending to show the value of the stock had been destroyed in the fire with the stock.

2. ——— *Inventory of Goods — Computation.* It is not error for the court to permit a competent witness to compute in the presence of the court and jury the aggregate amount of such inventory and state the result to the jury, such computations not having been theretofore made and entered on the inventory.

3. ——— *Authority of Agent—Waiver of Limitation.* The rule of law announced by the supreme court in *Am. Cent. Ins. Co. v. McLanathan,* 11 Kan. 533, and *Insurance Co. v. Munger,* 49 Kan. 178, 30 Pac. 120, as to the authority of insurance agents to waive conditions of the policy, applies to the facts of this case; and it is therefore *held,* that the agents of the plaintiff in error, who issued the policy sued on, had authority to waive the provision of the policy limiting the time in which suit should be brought to recover for a loss thereunder.

Error from Morris district court; James Humphrey, judge. Opinion filed December 15, 1898. Affirmed.

### STATEMENT.

This petition in error was originally filed by the plaintiff in error against Nancy Amsbaugh, as defendant in error, who has since died, and the case was revived by consent of the parties in the name of S. L. Sargent, administrator of her estate. Nancy Amsbaugh sued the plaintiff in error on a fire-insurance policy in the sum of $500. The issuing of the policy

and the loss by fire are admitted by the answer, but the company raises the question as to the amount of the plaintiff's loss and the amount for which it is responsible under the policy, if at all. The petition contains an allegation, for the purpose of avoiding the effect of the contract of limitation in the policy, of waiver of its terms by the agents of the company who issued the policy as well as by the adjuster to whom was submitted the adjustment of the loss.

*Bertram & Nicholson*, and *G. W. Barnett*, for plaintiff in error.

*Charles B. Graves*, for defendant in error.

The opinion of the court was delivered by

MAHAN, P. J. : There are numerous assignments of error. The first contention is, that the court erred in admitting an inventory taken by the plaintiff in 1887 of her stock of goods covered by her policy. The loss occurred in 1894. The objection made at the time of the offer was that the evidence was incompetent and too remote in point of time. It appears from the evidence that all of the data which had existed and which would show the value of the goods destroyed were burned, except this inventory and the plaintiff's accounts of purchases and sales of goods subsequent thereto ; that these were the best and only evidence within her control, or in existence, aside from her personal knowledge and recollection thereof; so that the inventory was not offered as original evidence, but as secondary, and of the highest quality in existence. Counsel cite, in support of their contention that the evidence was inadmissible by reason of these objections, the cases of *Insurance Companies v. Weides*, 9 Wall. 677, 14 id. 375. These cases, instead of sup-

porting the contention, are directly against it.   We can see no reason why, as a basis of arriving at the value of the stock of goods destroyed, the only inventory in existence should not be used.   Counsel contend that there is no evidence in support of its correctness, but that it was introduced as showing the value of the goods *per se* at the time it was taken.   In this counsel are mistaken.   It clearly appears from the evidence that the inventory is an original inventory taken by the plaintiff herself, and that it is a correct inventory, including values of the goods then in the store.

The next contention is that the court erred in permitting the plaintiff to testify to the amount of the footings to the inventory.   The record discloses that the footings were not carried forward ; that they did not appear therein.   Plaintiff testified that she had made careful computation, and that her computation was correct, and we can see no reason why she should not be permitted to testify thereto instead of taking the time of the court or referring the matter to some other person to compute.   If her computation was incorrect, that fact could have been ascertained and her attention called to it, or the fact itself made to appear.

The third contention is that the court erred in permitting the plaintiff to introduce in evidence her books showing purchases and sales subsequent to the inventory of 1887.   As we said before, the evidence discloses that this was the only means left to the plaintiff, or the defendant, for that matter, to ascertain the value of the goods in the store at the time it was burned, and was so offered, and under the circumstances it was not error to admit it.

The next contention is that the court erred in per-

mitting the plaintiff to testify to certify conversations between her and the agents of the plaintiff company, had after the loss, in which conversations the agents requested the plaintiff not to bring suit, and represented to her that the company would pay the loss without suit, and that it was unnecessary to put the defendant company to costs therein. This was in support of their allegation of waiver of the contract limiting the time within which suit was to be brought. The contention is that these agents were not authorized to waive this condition of the policy. In support of this contention, our attention is called by counsel to the nineteenth clause of the policy, as follows :

" The insured herein expressly acknowledges that he receives notice hereby that all agents of this company are prohibited from and directed not to make any agreements for this company of any kind, except in writing or print, and no agent is authorized to change, alter or waive any written or printed contract made with this company except it be in writing or print. It is also expressly agreed and understood that this company has special agents called adjusters to whom the adjustment of all losses is entrusted, and that no local agent has any authority whatever to act or do any thing relating in any manner to the adjustment of a loss."

It is sufficient answer to this provision in the policy to say that this waiver of the contract of limitation did not relate to the adjustment of the loss, nor were the conversations had with merely local agents, but with general agents of the company who were entrusted with the business of the company respecting that policy. It is contended, however, that these agents who issued the policy, received the premium and completed the contract for the company, cannot be presumed to have had any such authority without

actual proof thereof.   This contention cannot be sustained, under the decisions of our supreme court. The first case bearing on the question is *Am. Cent. Ins. Co. v. McLanathan*, 11 Kan. 533.   The second paragraph of the syllabus of that case is :

"An agent of an insurance company, authorized to issue policies of insurance and consummate the contract, binds his principal by any act, agreement, representation or waiver within the ordinary scope and limit of insurance business which is not known by the insured to be outside the authority granted to the agent."

The clause in the policy does not give notice to the assured that these agents were not authorized to waive this provision.   The case cited discloses, it is true, that the waiver of a provision of the policy was made at the time of its consummation.   In *Insurance Co. v. Munger*, 49 Kan. 178, 30 Pac. 120, in the second paragraph of the syllabus, it is said :

"An agent of an insurance company who is given full power to receive proposals of insurance against loss and damage by fire within a given territory in this state, and is authorized to fix rates of premium, to receive moneys, and to countersign, issue and renew policies of insurance, is a general agent of such company, and may, after loss, bind the company by a parol waiver of the conditions as to furnishing complete proofs of loss within thirty days after such loss shall have occurred, with builder's estimate of the value of the building, notwithstanding the policy provides that a waiver shall be void unless it is in writing, signed by the agent, and indorsed thereon."

In the opinion the court quote Wood on Fire Insurance, §§ 419, 447 ; *Rivara v. Queen's Insurance Co.*, 62 Miss. 728 ; and refer to Bliss on Insurance, § 296, *Phenix Ins. Co. v. Bowdrie*, 67 Miss. 620, 7 South. 597, and *Franklin F. Ins. Co. v. Colt*, 20 Wall. 560, in sup-

port of their conclusion embodied in the second paragraph of their syllabus, and approve of the doctrine therein announced.    The court, in *Rivara v. Queen's Ins. Co.*, supra, say :

" The powers of insurance agents to bind their companies are varied by the character of the functions they are employed to perform.   Their powers in this respect may be limited by the companies, but parties dealing with them as to matters within the real or apparent scope of their agency are not affected by such limitations unless they had notice of the same. An insurance agent clothed with authority to make contracts of insurance or to issue policies stands in the stead of the company to the assured.   His acts and declarations in reference to such business are the acts and declarations of the company.   The company is bound not only by notice to such agent but by anything said or done by him in relation to the contract or risk, either before or after the contract is made."

Within the rule laid down in these decisions, there can be no question but that the declarations of the agents who issued this policy and their request to the plaintiff to desist from bringing suit were binding on the company and were sufficient as a waiver of the contract limiting the time within which suit was to be brought.

The fifth contention is that the court erred in permitting Charles B. Graves to testify as to conversations had by him with one Winney to the effect that Winney told the witness, who was attorney for the plaintiff, that he (Winney) would examine the loss as adjuster for the company, and agreed with the plaintiff's attorney, the witness, that no suit should be brought until the attorney should be further advised about the conclusions of Winney upon his investigation of the matter.   This contention is based on the proposition that there is no evidence tending

Insurance Co. v. Amsbaugh.

to show that Winney was the adjuster of the defend-
ant company.   The only evidence of that fact is that
the agents who issued this policy, who had induced
the plaintiff to desist from bringing the suit, knowing
that the witness Graves was the attorney for the plain-
tiff, took Winney to the office of the attorney, and in-
troduced him to the attorney as the adjuster having
charge of the loss, for the purpose of discussing the
matter for the benefit of the company.   It is said that
neither the plaintiff nor her counsel had any right to
rely on the statement of the general agents of the com-
pany that this was the adjuster ;  had no right to rely
on the representation that he was the adjuster having
charge of the matter ;  and had no right to rely on his
arrangement regarding the adjustment of the loss and
the delay or omission of the plaintiff in bringing
suit ;  that notwithstanding the fact, which is admit-
ted, that the agents who issued the policy were in
fact the agents to the extent that the courts of this
state say they are, with the authority which the courts
of this state say they have, yet this company will now
be permitted to say, not that this man was in fact
their adjuster, but that these representations by their
agent were not sufficient authority on which the plain-
tiff might rely and on which she might lawfully base
her conduct with respect to the business existing be-
tween them.

   The insurance company in no manner pretends to
contradict the fact that Winney was the adjuster,
specially authorized to adjust this loss.   There seems
to be no room for contention, under the authorities
cited, over this matter.   Under these authorities, the
plaintiff doubtless had a right to rely on the state-
ments of the general agents of the company that he
was its adjuster, and the proof, uncontradicted in any

manner, was sufficient to warrant the jury in finding that Winney had the authority of such an adjuster to bind the company in contract whereby it waived the benefit of this provision in the policy limiting the time in which a suit might be brought.

The sixth assignment of error is that the court denied the defendant's motion to withdraw from the jury the evidence in regard to the conversations and contracts of waiver between the plaintiff and these agents of the company. The seventh assignment of error is that the court overruled the demurrer of the defendant to the plaintiff's evidence. The contention under this assignment is that there was no legal evidence of the value of the goods destroyed, and hence no legal evidence of the amount of the plaintiff's right of recovery. This contention is determined by what we have said under the fourth and fifth assignments.

The eighth assignment is practically the same as the fourth and fifth assignments.

The ninth assignment is that the court erred in its instructions to the jury numbered 3, 4, 5, and 6. The third instruction is in effect that if the jury find that the company, through its agents, represented that it would not be necessary to bring suit and requested the plaintiff and her attorney not to bring suit, that would amount to a waiver of a condition of the policy, and the jury on that proposition should find against the company. The fourth instruction is in substance the same, though different in form, to the effect that if the jury should find that the plaintiff delayed bringing suit until after the expiration of the six months on account of the inducements held out by the officers of the defendant, causing her to believe that the loss would be adjusted without suit, this would be a waiver of the six months' limitation of the policy.

The fifth is that if the adjusting agent of the defend-
ant agreed with the plaintiff's attorney to investigate
the loss personally, and to obtain an adjustment with-
out suit, and requested the attorney to delay bringing
the suit until notified by the adjuster that a settlement
was impossible, then the plaintiff would have a right
to delay bringing the suit until such notice was given by
the adjuster, or by the defendant through some other
agent; and further, that if one of the defendant's
agents who made the contract introduced to the attor-
ney of the plaintiff a person whom he represented to
be the adjuster for the defendant, for the purpose of
having the adjuster and attorney consider the plaintiff's
claim, and if the plaintiff's attorney believed him to be
an adjuster, then any arrangement made by the at-
torney with the supposed adjuster concerning the loss
would be as binding on the defendant as if he were in
fact the officer he represented himself to be.    The
sixth is that an insurance agent having authority to
issue policies, collect premiums and consummate in-
surance contracts has, in the absence of proof to the
contrary, full power to bind the company in all matters
concerning said insurance contract and losses by fire
thereunder.    The principles announced in these in-
structions are in harmony with the decisions of the
supreme court heretofore cited.    They are in line with
the evidence, and giving them constituted no error.

It is contended further that, inasmuch as there was
a reasonable time   after   the arrangements made
between the agents and adjuster and the plaintiff and
her attorney within which the plaintiff might have
brought her suit,   she would have no irght to rely
on the waiver; in fact, that it would not amount to
a waiver except for the time being.    It appears
from the evidence that this conduct on the part of

the agents of the company continued from soon after the loss until within a short time prior to the expiration of the six months, and while there was sufficient time after the arrangement between the adjuster, Winney, and the plaintiff's attorney, within which suit might have been brought, yet the arrangement was that no suit should be brought until some time in the future, when notice should be given of a failure of agreement, and no such notice was ever given.

The judgment is affirmed.